State, Morris and Essex R. R. Co., pros., v. Haight, Receiver, &c.

## NOVEMBER TERM, 1870.

## THE STATE, THE MORRIS AND ESSEX RAILROAD COMPANY, PROSECUTORS, v. HAIGHT, RECEIVER OF TAXES OF JERSEY CITY.

1. The Morris and Essex Railroad Company are the owners of a parcel of land adjacent to their depot grounds, at Hoboken, which they purchased to obtain increased accommodations in the transportation of passengers and coal. The whole tract, except a small strip, was originally below low water mark, and a considerable portion is still subject to overflow, and not fit for use, in its present condition, and the work of filling in is being prosecuted by the company, in connection with other improvements for increasing their facilities for the carrying business. The land, as far as reclaimed and capable of use, is used for piers, and for tracks, sidings, and other purposes connected with the trafficking business of the company, no part of it being occupied for work-shops, tenant-houses, or dwelling-houses, and the entire tract is within projected plans for the company's depot, and will speedily be needed for the transaction of their business. *Held*—that the whole of their lands were exempted from taxation, by virtue of the third section of the supplement to the company's charter, which prohibits the imposition of any tax upon any property purchased, held, or used by the company for the purposes of their charter, except the tax of one-half of one per centum on the cost of their road, which they were required to pay in lieu of all other taxes.

State, Morris and Essex R. R. Co., pros., v. Haight, Receiver, &c.

4. In applying clauses of exemption from taxation, to the property of companies in whose charters they are contained, the test of actual use by the company, for its purposes, may be a proper test, where the company has completed its road and appendages so far as is in the present contemplated. But where a company has not completed its road and appendages, and is engaged in the work of construction, the test of actual use is inapplicable, and the exemptive words must be extended to property not actually used for other purposes, which has been acquired as the means of carrying into effect the objects of the charter, and is fairly within the plan upon which the work is being executed, and will be necessary for the business of the company when its contemplated improvements are completed.

On *certiorari.* In matter of taxation.

Argued at June Term, 1870, before Justices, DEPUE and VAN SYCKEL.

For the prosecutors, *J. Vanatta.*

For the defendant, *Herbert Stout.*

The opinion of the court was delivered by

DEPUE, J. The prosecutors were assessed, in the year 1869, for certain lands in Jersey City, situate between North Seventh and North Twelfth streets, including a portion of the block on the north side of North Twelfth street, and extending from Prospect street to the Hudson river, including Piers 29 and 30, which extend into the river. By a supplement to their charter, approved March 5th, 1867, (*Acts of 1867, p.* 144,) the company were authorized to increase their capital stock to any amount not exceeding $10,000,000. and were empowered to straighten their railroad, reduce the grades thereof, to make necessary sidings, and other facilities for railroad purposes, to change the line of their railroad, or widen it at any point or points, to lay additional tracks and sidings, and make other improvements and facilities for attaining the objects of their incorporation.

The preamble to the act recites, as the reason for its pas-

sage, the fact that the prosecutors had extended their railroad to Phillipsburg, where connections were made with certain railroads extending to the coal fields of Pennsylvania, and that preparations had been made for the transportation of coal over their railroad.

By the third section of the supplement, it was enacted that " no tax, by or under the authority of this state, shall be imposed upon any property *purchased, held, or used* by said company for the purposes of their charter, or any of the suppleplements thereto, except the tax of one-half of one per centum on the cost of their road, which, by the said charter, and the supplement thereto, approved on the 23d of March, 1865, was required to be paid by said company in lieu of all other taxes, any act to the contrary notwithstanding." The exemption contained in this section was in force and operative at the time of the assessment in question. *State, M. & E. R. R. Co., pros.*, v. *McGavisk*, (Court of Errors, March Term, 1870), 5 *Vroom* 509. The only contention on the argument was whether the premises for which the tax was assessed, were within the force and effect of this exemptive section.

The assessment was made on these lands as being city lots, twenty-five by one hundred feet each. The lands lie within or adjacent to the depot grounds of the company at Hoboken, the eastern terminus of their railroad. That portion of them which lies between North Seventh and North Eighth streets was acquired by purchase of the Jersey Shore Improvement Company, by deed dated March 27th, 1869; and that portion which lies between North Eighth and North Ninth streets was obtained from Samuel Sloan, by deed bearing date July 6th, 1869. The other parcels were acquired by the company at an earlier date, and lie between the Sloan purchase and the company's main depot. All of these lands, with the exception of a narrow strip on the westerly side, were originally below high water mark on the Hudson river, and a considerable portion is still subject to overflow, and not susceptible of use in its present condition. On the river front are

two piers, which are in actual use for the business of the company, and over portions of the lands are laid tracks which lead to the piers, and also sidings on which to place the cars of the company when loaded with coal awaiting trans-shipment, or empty cars for the convenience of their business.

The whole of these lands were purchased and are held by the company for the purpose of obtaining increased accommodation for the transportation of passengers, and the transaction of the coal business, in which, in consequence of the connection with the coal fields referred to in the preamble to the supplement of 1867, the prosecutors are largely engaged. No part of the premises is occupied for work-shops, tenant-houses, or dwelling-houses, or for any other purpose except as connected with their freighting business.

The entire tract is within projected plans for the company's depot grounds at that terminus of the road, and the work of filling in and improving is being prosecuted by the company, in connection with the other improvements now being made for increasing their facilities for the carrying business.

The testimony of the chief engineer is, that the needs of the company for room to do their freighting business, are increasing greatly, and that within five years the space will have to be very much economized, to enable the company to carry on its business, with the use of all these lands.

The taxability of so much of these lands as are not actually in present use, is sought to be maintained on the ground that they are held for speculative purposes, and that the exemption from taxation must, of necessity, be restricted to such lands as are in actual use by the company for the transaction of their business, as otherwise a way will be opened for sheltering lands from taxation which may be held for purposes of speculation on their increased value, arising from the advance of lands in the market.

The charge that any portion of these lands was acquired or is held for purposes of speculation, is met and completely refuted by the testimony.

The construction by which the clause of exemption is sought

to be restricted to lands necessary for the present requirements of the company, and in actual use for their business, is not justified by the language of the section referred to.

The exemption, by express language, is extended to any property *purchased, held, or used* by the company for the purposes of their charter.

Lands purchased and held in good faith, the present intention to apply them to that use when they shall be made fit and suitable for the purposes mentioned, and with respect to which extension of the company's business, have been projected and are being executed, which will, when completed, require the use of such lands, are not only within the express words of the section, but are also within the reason and spirit of the act in which the clause of exemption is contained.

The cases relied on by the defendant's counsel to sustain his construction of the prosecutors' charter were *The State* v. *Mansfield*, 3 *Zab.* 510 ; *The State* v. *Newark*, 1 *Dutcher* 315 ; *S. C. on Error*, 2 *Dutcher* 519. Both these cases are widely different from the case now before the court, in the facts upon which they were decided.

In the first case, the taxation was on houses and lots owned by the company, and let by them to their workmen and employees. The premises taxed were neither necessary appendages to the operations of the road, nor were they purchased or held with the intention of being applied to use in the prosecution of their business.

In the second case, the statement of facts shows that the property taxed was leased for business purposes to third persons.

Aside from the difference between the language of the charters upon which those decisions were made, and the words of the statute upon which the prosecutors rely, the situation of those companies with respect to the property taxed, was entirely different from that of the prosecutors to the premises now in question.

In both those cases the companies had completed their roads, and were engaged in operating them, without the use of the

lands for which they were taxed. The premises were leased and used for purposes foreign to the business for which the companies were incorporated. In the Newark case, a pretence was made that the company had in contemplation to use the premises in the erection of piers, wharves, or other facilities, but it was manifest that they had no present intention of putting the property to that immediate use; and that no scheme of improvement was then being prosecuted for increasing their facilities, which, on its accomplishment, would require the application of the lands to that purpose.

In the case now under consideration, the lands, so far as reclaimed and capable of use, are used for the trafficking business of the company. The scheme of improvement authorized by the supplement of 1867, has not been completed. It is still *in fieri*, and the prosecutors are actively engaged in futhering its completion. When it is completed, the evidence shows that the whole of these lands will speedily be needed for the transaction of the increased business which their increased facilities will carry to that point.

In its legal aspect, this case is in no wise different from that which would have arisen if the prosecutors had been authorized to construct a railroad from Hoboken to Phillipsburg, under a charter containing a similar clause of exemption from taxation, and a tax had been laid on lands purchased for the road-bed while the company were engaged in pushing the work of construction to its completion. The lands now in question are as necessary and essential to enable the company to carry out the project authorized by the supplement of 1867, as lands acquired for a road-bed would be to a company empowered to build a railroad to enable them to construct their road, and to engage in the business for which the corporation was created.

The test of actual use, which was applied in the case of *The State* v. *Newark*, may be a proper test where the company has completed its road and appendages so far as is in the present contemplated. In that posture of affairs, lands which a company has purchased and is holding merely with a view to an

appropriation to business in the future, if the exigencies of business should require them, may be said to be held as a matter of convenience to the company, and not to be necessary to the prosecution of the objects of its incorporation.   But where a company has not completed its road and appendages, and is then engaged in the work of construction, the test of actual use is inapplicable.

In such cases the exemptive words must be extended to property not actually used for other purposes, which has been acquired as the means of carrying into effect the objects contemplated by the charter, and is fairly within the plan upon which the work is being executed, and will be necessary for the business of the company when its contemplated improvements are completed.   Lands which have been purchased and are held in good faith, with the view of so appropriating them when present plans are executed, are within the fair construction of the exempting clause, because, in the language of the court in *The State* v. *Mansfield*, " they are necessary and indispensable to the operations of the company, and the accomplishment of the objects of their charter."   The propriety of such a construction is manifest when applied to personal property, procured by a company not yet in operation, in the transaction of its business.

Suppose a railroad company, with a provision of exemption from tax in its charter, whose road was in the process of construction and not yet completed to be fit for use, should invest a portion of its capital in the purchase of locomotives, cars, and rolling stock, to have them on hand ready to be placed on the road when it should be prepared for the running of trains over it, that such property, though not in actual use when the assessment was made, would be within the operation of the exemption, is a proposition too plain to require argument for its support.

That the property, the liability of which to taxation is in question, is real property, cannot be permitted to affect the legal construction of the charter.   If the test of actual use is not under a particular state of facts, the proper test for deter-

mining whether the exemption from tax is operative as to one class of property, it is equally improper when applied under similar circumstances to another class of property within the same provision of exemption.

The lands for which the prosecutors have been taxed in this case are, by force of the act referred to, exempted from taxation, and the assessment must be set aside.

CITED *in State, Morris & Essex R. R. Co., pros.,* v. *Comm'rs, &c.,* 8 *Vr.* 229; *State, Cape May & Millville R. R., pros.,* v. *Collector,* 8 *Vr.* 271.